IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAY LEADER, | : | |
| Plaintiff | : | No. 1:12-cv-02570 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| FRANK NOONAN and KIM STUDENROTH, | : | |
| Defendants | : | |

### MEMORANDUM

Before the Court is Defendants Frank Noonan and Kim Studenroth's motion for summary judgment. (Doc. No. 23.) The motion is fully briefed and ripe for disposition. For the reasons that follow, the Court will grant the motion.

**I.  BACKGROUND**[1]

Plaintiff Jay Leader began employment with the Pennsylvania State Police in 2005, and began working as a Legal Assistant in the Right-to-Know Unit at the State Police department headquarters in December 2008. (Doc. No. 24 ¶¶ 1-2.) Plaintiff worked alongside his twin brother, Jonathan Leader.[2] (Id. ¶ 3.) On September 21, 2011, Plaintiff brought a Kel-Tec 9-millimeter pistol into the State Police department headquarters building and showed it to a co-worker, Brian Maksel, before placing it into his jacket pocket and carrying it out to his car. (Id.

___

[1] The following facts of record, taken from Defendants' statement of material facts (Doc. No. 24), are undisputed, unless otherwise noted. Defendants' statement of material facts contain specific citations to the record at each numbered paragraph.

[2] Jonathan Leader is also the Plaintiff in a related case, Leader v. Noonan, No. 12-2571, which brings substantially similar claims against Defendants Noonan and Sudenroth. Defendants have also moved for summary judgment in that case, which is proceeding separately from this one, and whose motion this Court addresses in a separate memorandum.

¶¶ 4-6.) Cynthia Fisher, the formal Legal Assistant Supervisor, notified Captain Grimes, director of the operational records division, that Plaintiff brought a gun into the building. (Id. ¶¶ 7-8.) Grimes discussed the incident with Human Resources, an internal investigation was initiated, and it was determined that troopers would contact Plaintiff about why he brought a gun into work. (Id. ¶¶ 9-11.)

That same day, Trooper Roy Van Buskirk, Ron Wilkins, the union steward, and Corporal David Hatfield held a meeting[3] with Plaintiff, during which he admitted he brought a firearm into the building, and that he had shown it to Maksel. (Doc. No. 24 ¶¶ 16-22.) Plaintiff showed Van Buskirk his permit to carry, and Van Buskirk provided Plaintiff with a copy of the Code of Conduct, Administrative Regulation 4-6, which banned firearms in the workplace. (Id. ¶¶ 25-26.) Plaintiff admitted that he knew there was a policy against bringing firearms into the building. (Id. ¶¶ 21, 27.) Plaintiff then filled out and signed a statement in which he essentially stated that he brought the gun into work by accident. (Id. ¶¶ 23-24.) Specifically, he indicated that he had placed the gun into his backpack to take to a gun shop after work. (Id. ¶¶ 24.) However, once at work Plaintiff said he "felt something heavy in my bag which was not my lunch . . . showed [Maksel] as I was putting it in my pocket to take it to my car. So as to say, whoops look what I forgot." (Id.) Van Buskirk also took witness statements from Maksel and Fisher; Maksel reported that he had been bullied by Plaintiff and he believed Plaintiff pulled the handgun out in order to threaten him, even showing him that the clip had bullets in it. (Id. ¶¶ 29-31.)

---

[3] This is the sole statement in Defendants' statement of material facts that Plaintiff disputes. Plaintiff appears to object to Defendants characterization of the "meeting," instead stating that "Trooper Van Buskirk was fact-finding." (Doc. No. 28-1.)

Thereafter, Grimes, the deputies and the human resources department held a meeting during which it was determined that Plaintiff would be suspended. (Doc. No. 24 ¶ 32.) Grimes subsequently approached Plaintiff, informed him he was being suspended without pay pending an investigation concerning bringing a firearm into work, and escorted him from the building. (Id. ¶¶ 32-35.) On that same day, September 22, 2011, Grimes received a report that Plaintiff's brother, Jonathan Leader, motioned as if he was aiming a rifle at Maksel, and stated he had Maksel "scoped like a big buck." (Id. ¶ 36.) Grimes notified HR. (Id. ¶ 37-38.) He then met with Jonathan, who admitted making both the motion and the statement. (Id. ¶¶ 39-41.)

At this point, it was determined that the Internal Affairs Division would handle the investigation because Maksel alleged that he felt threatened. (Doc. No. 24 ¶ 42.) Internal Affairs then initiated an investigation regarding Jay bringing a gun into the workplace and showing to Maksel, and regarding Plaintiff's alleged threatening of Maksel. (Id. ¶ 43.) On the morning of September 23, 2011, a meeting was held with Defendant Studenroth, human resources employee Brooke Meade, Grimes and three other deputies. (Id. ¶ 44.) Grimes informed everyone at the meeting that Maksel said he felt threatened by the gun incident and believed it was an escalation of the brothers' continued bullying behavior towards him. (Id. ¶¶ 45-47.) It was determined at this meeting that Plaintiff would remain suspended pending further investigation, and that Jonathan Leader would be suspended as well. (Id. ¶ 49.) Defendant Studenroth recommended the suspensions, and prepared suspension letters under her signature. (Id. ¶¶ 49-50.) The letter, which Plaintiff received at home that very day, indicated that he

violated Administrative Regulations 4-6 and 4-26[4]. (Id. ¶¶ 53-56.) Following his suspension, on September 29, 2011, Plaintiff filed a grievance with his union for being suspended without just cause. (Id. ¶ 58.)

The subsequent internal investigation uncovered a history of allegations of harassment of Maksel by Plaintiff. (Doc. No. 24 ¶¶ 59-69.) After Sergeant William E. Tucker completed his internal investigation and report, Plaintiff was notified that a formal Pre-Disciplinary Conference was scheduled for December 30, 2011. (Id. ¶¶ 72-73.) At the conference, charges were presented to Plaintiff, and he was given an opportunity to respond. (Id. ¶ 75.) Grimes, the adjudicating officer for the investigation, determined that Plaintiff and his brother and violated Administrative Regulations 4-6, 4-26 (harassment) and 4-42 (workplace violence). (Id. ¶¶ 76-78.) Major Martin Henry was the reviewing officer, and he concurred in Grimes' assessment. (Id. ¶ 79.) On February 6, 2012, two uniformed officers came to Plaintiff's residence and handed him a letter of termination. (Id. ¶ 81.) Following his termination, Plaintiff filed a grievance regarding his termination through the union. (Id. ¶¶ 82-85.) His grievance went before a panel consisting of three individuals from the union, and three from the Commonwealth; the panel denied his grievance and upheld his termination. (Id. ¶¶ 85-90.)

On December 6, 2012, Plaintiff filed a Section 1983 complaint in this Court, alleging that Defendants (1) violated his right to due process under the Fourteenth Amendment by suspending him without notice and a hearing, and (2) violated his rights under the First Amendment by retaliating against him for filing a grievance regarding his suspension. (Doc. No. 1.) Following

---

[4] AR 4-26 was a harassment policy, which Plaintiff admitted he was aware of, as he had attended a meeting with an EEOC officer discussing the policy. (Id. ¶ 56.)

discovery, Defendants filed a motion for summary judgment on April 14, 2014.  (Doc. No. 23.)  The motion is fully briefed and ripe for disposition.

## II.     LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.  DISCUSSION

Defendants Noonan and Studenroth move for summary judgment on Counts One and Two of Plaintiff's complaint. (Doc. No. 23.) First, the Court will address Defendants' contention that summary judgment is warranted on Count One as to Defendant Noonan, because Plaintiff has not uncovered facts showing that Noonan had any personal involvement in the alleged due process violation. Second, the Court will address Defendants' motion for summary judgment on Count One, which alleges that Defendants suspended him without Due Process in violation of the Fourteenth Amendment to the United States Constitution. Lastly, the Court will address Defendants' motion for summary judgment on Count Two, which alleges that Defendants retaliated against him in violation of the First Amendment to the United States Constitution.

### A.  Count One: Fourteenth Amendment due process (Defendant Noonan)

As an initial matter, Defendants assert that summary judgment must be granted in favor

of Defendant Noonan on Plaintiff's Fourteenth Amendment claim because there is no evidence in the record that Noonan played any role in the decision to suspend Plaintiff, as he was not present at the meetings during which the decision to suspend Plaintiff was made. (Doc. No. 25 at 3-4.) A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff does not respond to this contention in his brief in opposition, and the Court assumes that he does not dispute this aspect of the motion. Because the Court agrees that the record does not provide evidence of Defendant Noonan's personal involvement in Plaintiff's alleged due process violation, the Court will grant summary judgment to Defendant Noonan on Count One.

### B. Count One: Fourteenth Amendment due process (Defendant Studenroth)

The Fourteenth Amendment to the Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. When a plaintiff sues a state actor on the grounds that he failed to provide procedural due process, a court must inquire (1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of "life, liberty, or property;" and (2) whether the procedures available provided the plaintiff with due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). It is undisputed that Plaintiff had a property interest in his continued employment (See Doc. No. 25 at 5), so the Court's inquiry is limited to whether Defendants provided Plaintiff with adequate due process prior to suspending him without pay. Defendants argue that the undisputed facts indicate that Plaintiff was provided notice of the allegations and a chance to respond prior to his suspension, thereby satisfying due process. (Doc. No. 25 at 6-7.) Plaintiff argues that

there is sufficient evidence from which a jury could conclude that Plaintiff was denied notice of the charges against him and a pre-deprivation hearing, and therefore did not receive adequate due process. (Doc. No. 28 at 4-5.)

The Third Circuit has held that where a plaintiff has a property interest in employment, due process generally requires a pre-suspension hearing. Schmidt v. Creedon, 639 F.3d 587, 595-96 (3d Cir. 2011). However, such a hearing "need not be elaborate." Id. at 596 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985)). "Where adequate post-deprivation procedures are available, an employee is entitled only to notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. "The hearing can be informal and need not definitively resolve the propriety of the deprivation." Id. "It should be an initial check against mistaken decisions;" in other words, "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. "An employee is generally not entitled to notice of the reasons for his discharge in advance of a pre-deprivation hearing . . . or to present his case to an impartial decision-maker at such a hearing." Id. (internal citations omitted).

The Court will grant Defendant Studenroth's motion for summary judgment on Plaintiff's Fourteenth Amendment claim. The undisputed record reveals that Trooper Van Buskirk, Corporal David Hatfield, and a union representative met with Plaintiff prior to his suspension and asked about the allegations that he brought a firearm into the building and showed it to his co-worker, Maksel. (Doc. No. 24 ¶¶ 16-22.) Plaintiff was given a chance to respond and admitted he brought the gun, admitted that he had shown it to Maksel, and acknowledged that he knew it was against the rules to do so. (Id. ¶¶ 19-22). Plaintiff was further permitted to provide

a statement in which he indicated that bringing the gun in was an accident, and that he showed it to Maksel simply to say "whoops, look what I forgot;" in other words, that he did not intend to threaten Maksel. (Id. ¶¶ 23-24.) Grimes later informed Plaintiff that he was being suspended without pay pending an investigation that he had brought a firearm into work, and it was determined at a subsequent meeting that he would remain suspended pending further investigation. (Id. ¶¶ 34, 48.) Thus, the undisputed facts of record indicate that Plaintiff was made aware of the allegations against him, and was given an opportunity to respond, thereby satisfying due process requirements prior to his suspension. See Loudermill, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond.").

In support of his argument that "a reasonable jury could conclude plaintiff did not receive a predetermination hearing," Plaintiff primarily argues that Defendants formally refer to a pre-determination hearing as a "Pre-Disciplinary Conference," (PDC), and that Defendants concede no formal PDC was conducted prior to the suspension.[5] (Doc. No. 25 at 4.) However, the United States Court of Appeals for the Third Circuit has made it clear that a _formal_ hearing, such as the PDC described by Plaintiff, is not required pre-suspension in order to satisfy due process. See Schmidt, 639 F.3d at 596 (noting that a pre-suspension hearing can be "brief and informal" and "need not definitively resolve the propriety" of the deprivation). The record indicates that Plaintiff was confronted and informed that he was reported as bringing a gun into work and showing it to a co-worker. He was given an opportunity to explain why he did so. This was all done prior to the decision to suspend him without pay. (Doc. No. 24 ¶¶ 32-51.) This informal

---

[5] Plaintiff received a formal PDC on December 30, 2011, after his suspension but before his termination, in which the charges were again presented and he was given further chance to respond to them prior to his official termination. (Doc. No. 24 at 73-75.)

questioning complies with the Fourteenth Amendment's due process guarantees, and the fact that a full "PDC" was not initiated at the time does not change the analysis. See Schmidt, 639 F.3d at 596 (3d Cir. 2011) (observing that the justification behind providing a pre-suspension hearing is that it "would not impose a significant administrative or fiscal burden on the Commonwealth of Pennsylvania" and that such a hearing therefore "need not be elaborate").

Plaintiff also appears to argue that the record supports a finding that Plaintiff did not receive sufficient notice of the charges during his meeting with troopers. (Doc. No. 28 at 4.) Specifically, Plaintiff asserts that Trooper Van Buskirk's report of his meeting with Plaintiff "does not disclose . . . that charges were presented to the Plaintiff, or that evidence was presented to the Plaintiff," and that "no charges were determined because Trooper Van Buskuirk was gathering evidence so that charges could be determined and presented." (Id.) However, Plaintiff adduces no evidence or dispute of material fact in support of his contention that notice was not provided to Plaintiff at the meeting.[6] Notice is meaningful and sufficient where it simply "apprises the individual of the substance of the matter at hand and permits adequate time to present any counter information and response." Andrekovich v. Chenoga, No. 11-1364, 2012 WL 3231022, at *5 (W.D. Pa. Aug. 6, 2012) (citing McDaniels v. Flick, 59 F.3d 446, 454-57 (3d Cir. 1995)). Here, the undisputed facts indicate that Plaintiff was informed of the substance of the complaint – he brought a gun into work and showed it to his co-worker, who reported that Plaintiff had done so – and was given a chance to make a statement and to respond to this

---

[6] Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

allegation, at which point he admitted to bringing in the firearm and showing it to Maksel. Grimes later informed Plaintiff that he was suspended without pay pending an investigation into the allegations that he brought a firearm into work. (Doc. No. 24 ¶ 34.) Plaintiff does not identify for the Court any additional information or facts that he needed in order to adequately respond to this accusation. See Gniotek v. City of Philad., 808 F.2d 241, 244 (3d Cir. 1986) (affirming grant of summary judgment and finding that notice was sufficient when it was of "such specificity to allow [plaintiff] the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges"). Plaintiff was suspended only after had an opportunity to respond and confirmed to investigators that the allegations of misconduct regarding his bringing a gun into the workplace were true.

As for Plaintiff's argument that Van Buskirk was merely "fact-finding" when he met with Plaintiff and that "no charges were determined at that time" (Doc. No. 28 at 4), due process does not require that any sort of formal charge be drafted or levied prior to a pre-deprivation hearing; neither does "notice" require that a specific formal charge be made at the time. See Copeland v. Philadelphia Police Dep't, 840 F.2d 1139, 1145-46 (3d Cir. 1988) (affirming grant of summary judgment and holding that plaintiff's due process rights were not violated simply because the "city did not prepare the formal, written charges against [plaintiff] until after he had been dismissed", and, "the formal charge was based on the same information previously made available to [plaintiff], which he had the opportunity to refute").

Accordingly, the Court finds that the undisputed facts indicate that Plaintiff was given notice of the charges against him and a chance to respond prior to his suspension without pay, thereby providing him "an initial check against mistaken decisions." See Schmidt, 639 F.3d at

587. Because the record reveals that Plaintiff was afforded due process prior to his suspension, the Court will grant summary judgment to Defendant Studenroth on Count One.

### D.  Count Two: First Amendment retaliation

Defendants also move for summary judgment on Count Two, in which Plaintiff alleges that Defendants violated his First Amendment rights by terminating him in retaliation for utilizing the grievance process regarding his suspension. (Doc. No. 23.) Defendants argue that the undisputed record shows that Plaintiff did not engage in protected speech, nor was there any causal link between his grievance and the termination. (Doc. No. 25 at 8-11.) Plaintiff does not respond to Defendants' motion regarding the retaliation claim.

To establish a Section 1983 First Amendment retaliation claim, a plaintiff must show: (1) the plaintiff participated in activity protected by the First Amendment; (2) the defendant retaliated against the plaintiff in a manner that would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights;" and (3) a causal nexus existed between the protected activity and the retaliation. Alers v. City of Philadelphia, 919 F. Supp. 2d 528, 553 (E.D. Pa. 2013) (citing Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)). "Where a public employee claims First Amendment retaliation by a government employer, the plaintiff-employee must demonstrate that he 'spoke as a citizen on a matter of public concern' for his activity to be protected by the First Amendment. Id. (citing Borough of Duryea, Pa. v. Guarnieri, 131 S.Ct. 2488, 2493 (2011).

Defendants argue, and the Court agrees, that the record does not indicate that Plaintiff spoke on a matter of public concern. Guarnieri, 131 S. Ct. at 2501 ("A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to

the public or to advance a political or social point of view beyond the employment context.") The record also does not indicate that there is a causal connection between Plaintiff's grievance and his termination, as it is undisputed that Plaintiff was terminated upon a finding that he violated rules of workplace conduct. (Doc. No. 24 ¶ 82.) Accordingly, because there are no triable issues of disputed fact precluding judgment in favor of Defendants on Plaintiff's First Amendment retaliation claim, the Court will grant summary judgment to Defendants on Count Two.

## IV. CONCLUSION

The Court finds that Plaintiff has not adduced evidence or a material dispute of fact in support of his procedural due process and retaliation claims, and will grant summary judgment to Defendants on both counts of Plaintiff's complaint.[7] An order consistent with this memorandum follows.

---

[7] Because the Court finds that Defendants are entitled to summary judgment and did not violate Plaintiff's constitutional rights, it does not need to address Defendants' alternative argument that they are entitled to qualified immunity. See Higgins v. Borough of Taylor, No. 07-622, 2009 WL 1505611, at *6 (M.D. Pa. May 27, 2009) (citing Sanford v. Stiles, 456 F.3d 298, 313 (3d Cir. 2006)).